# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

NO. 14-4838

UNITED STATES OF AMERICA,

Appellee,

v.

IKE DAVID SIMMONS,

Appellant.

_____

BRIEF FOR APPELLANT

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NORTH CAROLINA

THOMAS P. McNAMARA
Federal Public Defender

ERIC J. BRIGNAC
Assistant Federal Public Defender

150 Fayetteville St., Suite #450
Raleigh, NC 27601
(919) 856-4236

COUNSEL FOR APPELLANT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

STATEMENT OF JURISDICTION ...............................................................1

ISSUE PRESENTED FOR REVIEW ...........................................................2

STATEMENT OF THE CASE .......................................................................3

SUMMARY OF ARGUMENT ......................................................................6

ARGUMENT ..................................................................................................8

    *THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO*
    *REDACT PARAGRAPH 29 FROM THE PRESENTENCE REPORT*............8

CONCLUSION ...............................................................................................16

REQUEST FOR ORAL ARGUMENT ..........................................................17

CERTIFICATE OF COMPLIANCE .............................................................17

CERTIFICATE OF MIXED SERVICE.........................................................18

i

# TABLE OF AUTHORITIES

## CASES

*Greenwalt v. Ind. Dep't of Corr.*,
397 F>3d 587 (7th Cir. 2005) ........................................................................12

*Julian v. U.S. Dept. of Justice*,
806 F.2d 1411 (9th Cir. 1986) ................................................................. 8-9

*Nixon v. Adm'r of General Servs.*
433 U.S. 425 (1977) ...................................................................................12

*Pell v. Procunier*,
417 U.S. 817 (1974) ...................................................................................12

*Turner v. Safley*,
482 U.S. 78 (1987) ...................................................................................12

*United States v. Huckaby*,
43 F.3d 135 (5th Cir. 1995) ................................................................. 8-11, 15

*United States v. Schlette*,
842 F.2d 1574 (9th Cir. 1988) ..................................................................9, 14

*Whalen v. Roe*,
429 U.S. 589 (1977) ...................................................................................12

## STATUTES

18 U.S.C. § 2251 ...........................................................................................1

18 U.S.C. § 3231 ...........................................................................................1

18 U.S.C. § 3661 ................................................................................8, 15

18 U.S.C. § 3742 ....................................................................................1

28 U.S.C. § 1291 ....................................................................................1

## OTHER AUTHORITIES

Fed. R. Crim. P. 32 ...............................................................................8

U.S.S.G. § 1B1.4 ..............................................................................8-9, 15

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the original criminal prosecution pursuant to 18 U.S.C. §§ 2251, 3231. The district court sentenced Mr. Simmons on November 3, 2014, and entered final judgment that same day. Mr. Simmons timely appealed that decision on November 7, 2014. This Court has jurisdiction, pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, over this timely appeal from a final order.

## ISSUE PRESENTED FOR REVIEW

Whether the district court abused its discretion in refusing to redact paragraph 29 from the Presentence Report.

## STATEMENT OF THE CASE

From late 2009 through July, 2013, the Defendant-Appellant, Ike David Simmons, molested his stepdaughter.  (J.A. 75).  He filmed some instances of this abuse.  (J.A. 75-76).  As a result, on January 21, 2014, a grand jury sitting in the Eastern District of North Carolina indicted Mr. Simmons on ten counts of manufacturing child pornography and one count of possessing child pornography.  (J.A. 8).

On June 2, 2014, pursuant to a plea agreement, Mr. Simmons pleaded guilty to Count One of the indictment, charging the manufacture of child pornography.  (J.A. 30).  This plea agreement waived Mr. Simmons's right to appeal a sentence imposed within the advisory Guidelines range established at sentencing.  (J.A. 33-34).

Mr. Simmons expressed extreme remorse for his actions.  On June 27, 2014, he submitted a written statement to the United States Probation Office "wherein he accepted responsibility and expressed remorse for committing the . . . offense."  (J.A. 76).  At sentencing, Mr. Simmons expressed the same remorse, telling the court

3

I cannot think of a single thing to say on my behalf. Sorry. I cannot think of a single thing to say on my behalf, to be honest with you, Your Honor. So if it's okay, I would like to apologize to [my ex-wife] Cori Hart for betraying her in the worst possible way. I would like to apologize to [my victim] for betraying her in the worst possible way. I know what I did was terrible, and as futile as it sounds it was never my intent. I'm a very selfish person and I realize that, and it's because I know this that I feel like I have no right to ask for mercy; although I desperately want it, I know I have no right to ask for it, so I don't. I never intended on the outcome of our relationship. I never intended to be the monster she described. That's all.

(J.A. 51-52).

In preparation for sentencing, the United States Probation Office prepared a Presentence Report ("PSR"). (J.A. 73). The PSR recommended an advisory Guidelines range of 360-600 months imprisonment. (J.A. 83).[1] It also contained, at Paragraph 29, allegations derived from personal mental health records obtained by the Probation Office. (J.A. 79-80). Mr. Simmons objected to the inclusion of these records, asking that these allegations be redacted from the PSR after sentencing. (J.A. 86).

---

[1] The range recommended by the advisory Guidelines was 360 months to life. Mr. Simmons's range was capped at 600 months due to the statutory maximum punishment of 50 years authorized by the crime of conviction. (J.A. 83).

At sentencing on November 3, 2014, Mr. Simmons renewed this objection, explaining to the district court that these allegations regarding highly-sensitive mental health records would likely be used against Mr. Simmons at potential future civil commitment proceedings under 18 U.S.C. § 4248. (J.A. 42). The district court denied the objection. (J.A. 43).

After hearing from the parties and a victim, the district court sentenced Mr. Simmons to 600-months imprisonment, the top of the advisory Guidelines range. (J.A. 58).

On November 7, 2014, Mr. Simmons timely appealed. (J.A. 71).

## SUMMARY OF ARGUMENT

Mr. Simmons believes that the 600-month sentence imposed upon him was excessive and unreasonable. However, he waived his right to appeal the length of his sentence. (J.A. 33-34).

The district court did, however, commit reversible error subject to this Court's review. Specifically, it abused its discretion in refusing to redact Paragraph 29 of the Presentence Report ("PSR"). This paragraph contained personal information regarding Mr. Simmons's prior mental health treatment. The district court properly considered this information in fashioning sentence. However, after imposing sentence, the district court abused its discretion in refusing to redact the information in that paragraph.

Mr. Simmons has a constitutionally-based privacy interest in the non-disclosure on personal information. This interest outweighs the government's marginal interest in keeping the information in the PSR. In addition, the information in Paragraph 29 does not comport to the same standards of reliability as other pieces of evidence at trial and, accordingly,

keeping it in the PSR runs the risk of improper information being mis-used against Mr. Simmons.

Finally, by refusing to redact Paragraph 29, the district court encourages future defendants to attempt to limit the information that will be contained in PSRs. This encouragement runs counter to Congress's express goal of providing the most information possible to federal sentencing courts.

The district court abused its discretion. Paragraph 29 should be redacted.

## ARGUMENT

## THE DISTRICT COURT ABUSED ITS DISCRETION IN REFUSING TO REDACT PARAGRAPH 29 FROM THE PRESENTENCE REPORT

*Standard of Review*

The question of whether the district court erred in refusing to redact Paragraph 29 from the PSR is reviewed for an abuse of discretion. *Accord United States v. Huckaby*, 43 F.3d 135, 138 (5th Cir. 1995)(discussing disclosure of PSR to third parties).

*Argument*

   A. *The Creation and Use of Presentence Reports*

Both Congress and the United States Sentencing Commission want a district court to consider, with very little restriction, a wide variety of information when imposing sentence on a defendant. *See* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. The PSR provides the primary means through which the district court obtains this information. *See Julian v. U.S. Dept. of Justice*, 806 F.2d 1411, 1415 (9th Cir. 1986). Accordingly, the PSR "must . . . contain," among other things, "the defendant's history and characteristics." Fed. R. Crim. P. 32 (d)(2)(A).

8

The PSR lives long past a defendant's sentencing date. It follows him to prison because "[t]he report also is used by the Bureau of Prisons . . . in assessing the prisoner for purposes of incarceration, treatment and, eventually, release." *United States v. Schlette*, 842 F.2d 1574, 1578 (9th Cir. 1988); *see also Julian*, 806 F.2d at 1415 ("[I]f the convicted defendant is incarcerated, the report accompanies him to the correctional institution, where the Bureau of Prisons utilizes the contents of the report to classify the prisoner for the facility and to determine an appropriate treatment program.").

Despite the breath of information that a PSR contains and its potentially indefinite lifespan, they are not constructed and maintained with the level of care that we might demand or expect. In their attempts to provide a sentencing court with information "without limitation," PSRs will necessarily sacrifice both accuracy and the defendant's privacy. U.S.S.G. § 1B1.4. "[D]espite the care with which they are prepared, [PSRs] do not conform to the rules of evidence and may contain errors." *Huckaby*, 43 F.3d at 138. Even when a defendant at sentencing demonstrates to the

district court that the PSR contains erroneous or otherwise improper facts

or allegations, "the [PSR] is not usually rewritten to remove

misinformation." *Id.* Accordingly, use of PSRs outside of a criminal

sentencing could easily lead to "misunderstandings about a defendant."

*Id.*

And these "misunderstandings" do not always involve minor or

irrelevant issues. A PSR contains some of the most personal and intimate

information possible to obtain about an individual. The PSR "reveals not

only details of the offense but, in the broadest terms, any other information

that may aid the court in sentencing. A [PSR] routinely describes the

defendant's health, family ties, education, financial status, mental and

emotional condition, prior criminal history and uncharged crimes." *Id.*

(internal quotation omitted).

PSRs, in other words, contain as broad a survey of information as

possible, sometimes at the expense of accuracy and privacy. This trade-off

works at sentencing where a defendant has the opportunity to explain and

clarify problems with the PSR to the sentencing judge. Unfortunately, the

PSR follows a defendant—uncorrected—into the Bureau of Prisons, where government officials use it to make significant decisions about an inmate—with no opportunity for the inmate to dispute, correct, or complain about the information contained in the PSR.

    *B.  The district court erred in refusing to redact Paragraph 29.*

    Mr. Simmons does not object to the district court having used the information in Paragraph 29 in sentencing him.   But the district court abused its discretion in refusing to redact this information after sentencing Mr. Simmons.

    Paragraph 29 contains highly-personal allegations of mental health treatment that Mr. Simmons received in the past.  (J.A. 79-80).  Mr. Simmons "has a privacy interest in" this information.  *Id.*  Just because Mr. Simmons committed a crime and is going to the Bureau of Prisons does not deprive him of that privacy interest.  "It is settled that a prison inmate 'retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections

system.'" *Turner v. Safley*, 482 U.S. 78, 95 (1987) (quoting *Pell v. Procunier*,

417 U.S. 817, 822 (1974)).

One of "those constitutional rights" that Mr. Simmons shares with

the rest of us is his right not to have his most intimate details shared

against his will.  Mr. Simmons, like all citizens, has an interest, protected by

the Due Process Clause, "in the nondisclosure of private information."

*Whalen v. Roe*, 429 U.S. 589, 600 (1977); *see also Nixon v. Adm'r of General*

*Servs.*, 433 U.S. 425, 457 (1977) ("One element of privacy has been

characterized as the individual interest in avoiding disclosure of personal

matters" (internal quotation omitted)).  While the exact contours of the

privacy right at issue have not been fully defined, *see Greenawalt v. Ind.*

*Dep't of Corr.*, 397 F.3d 587, 592 (7th Cir. 2005), Mr. Simmons herein only

invokes an extremely narrow interpretation of it.  Specifically, he contends

only that the district court abused its discretion in not properly considering

Mr. Simmons's right to privacy in deciding not to redact that paragraph of

the presentence report.

In contrast to Mr. Simmons's strong constitutional right to privacy, the government's interest in keeping that information un-redacted is not compelling. First, the district court had already considered the information in sentencing Mr. Simmons. Accordingly, the court's interest in having all relevant information available for sentencing is not implicated at all on the question of whether to *redact* that information after sentencing. Second, Mr. Simmons is not asking the court to expunge his record. He simply wants the information redacted from a single report; the government's interest is, accordingly, only in having this information in a form that it prefers—a much weaker interest than in having the information not available at all.

In addition to not properly weighing the parties's interests, the district court also abused its discretion in not properly considering the potential inaccuracies and future misuse of the information. Using a PSR outside of a criminal sentencing is dangerous work because, as noted above, PSRs are designed solely for use at sentencing. The Bureau of Prisons's use of PSRs to make critical life-decisions for inmates is merely

13

"an ancillary function" of the documents. *Schlette*, 842 F.2d at 1581. The courts should not unduly encourage that ancillary use. Instead, the courts should, in appropriate circumstances, cabin the ancillary use of PSRs outside of the sentencing context.

This case presents a particularly strong risk of misuse of the PSR. As the parties at the sentencing contemplated, the BOP may use Paragraph 29 in deciding whether to certify Mr. Simmons under 18 U.S.C. § 4248 and subject him to civil commitment proceedings. (J.A. 42). Considering the 600-month sentence that Mr. Simmons received, that certification decision will happen in around forty years. By that point, the original records upon which the PSR based these allegations may very well no longer exist. Mr. Simmons will have no opportunity to correct the hearsay and the allegations in the paragraph. Instead, it will stand, unquestioned and unchallenged, as the truth. The district court should have exercised its discretion to prevent this.

Finally, the district court abused its discretion in making a decision that will lead to less accurate sentencing information for courts going

14

forward. As noted above, both Congress and the Sentencing Commision have expressed a preference for more, not less, information to be available to federal sentencing courts. *See* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. "[T]he court depends heavily upon the [PSR] to fulfill [this] mandate of the Sentencing Guidelines and impose a just sentence." *Huckaby*, 43 F.3d at 138. Excessive and undue disclosure of information contained in PRSs runs counter to that mandate. "Were the confidentiality of presentence reports to be freely or regularly breached, the government's access to information needed for criminal investigation would be severely compromised." *Id.* Such disclosure "may stifle or discourage [the] vital transmission of information by the defendants, whose contribution to a [PSR] is significant . . . ." *Id.*

In fact, just such discouragement happened in this case. Knowing that the information would almost certainly follow him into the Bureau of Prisons, Mr. Simmons refused to sign a release allowing the Probation Office access to all of his mental health records for use in drafting the PSR. (J.A. 80). Considering Mr. Simmons's extreme remorse for his conduct, he

very likely would have cooperated with the Probation Office as part of his overall acceptance of responsibility. This cooperation would have better served Congressional goals at sentencing. Instead, Mr. Simmons, in order to protect his post-sentencing privacy, had no rational choice other than to limit the information available at sentencing.

In short, by not redacting the information contained in the PSR post-sentencing, the district court has created a world in which less information will be available to the courts at sentencing. This was an abuse of discretion.

## CONCLUSION

For the foregoing reasons, this case should be remanded with instructions to redact Paragraph 29 of the Presentence Report.

## REQUEST FOR ORAL ARGUMENT

Mr. Simmons respectfully requests oral argument.

Respectfully submitted this 4th day of March, 2015.

> THOMAS P. McNAMARA
> Federal Public Defender
>
> /s/Eric J. Brignac
> ERIC J. BRIGNAC
> Assistant Federal Public Defender
> N.C. Bar No. 28443

## CERTIFICATE OF COMPLIANCE

I certify that

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because this brief contains no more than 2,126 words, excluding the parts of this brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and

2. This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type style requirement of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Palitino Linotype.

> /s/Eric J. Brignac
> ERIC J. BRIGNAC
> Assistant Federal Public Defender
> N.C. Bar No. 28443

## CERTIFICATE OF MIXED SERVICE

I certify that today, March 4, 2015, I electronically filed the foregoing via CM/ECF, which will send notice to all counsel of record.

I further certify that today, March 4, 2015, I have mailed the forgoing by First-Class Mail, postage prepaid to

JENNIFER P. MAY-PARKER
Assistant United States Attorney for the Eastern District of North Carolina
Terry Sanford Federal Building
310 New Bern Avenue, Suite #800
Raleigh, North Carolina 27601-1461

/s/Eric J. Brignac
ERIC J. BRIGNAC
Assistant Federal Public Defender
N.C. Bar No. 28443