BRIEF FOR APPELLEE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

NO. 14-4838

————————————

UNITED STATES OF AMERICA,

Appellee,

v.

IKE DAVID SIMMONS,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

BRIEF OF THE UNITED STATES

THOMAS G. WALKER
United States Attorney

BY:  JENNIFER P. MAY-PARKER
SETH M. WOOD
Assistant United States Attorneys
310 New Bern Avenue
Suite 800
Raleigh, North Carolina 27601
Telephone:  (919) 856-4530

Attorneys for Appellee

TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................ii

STATEMENT OF JURISDICTION......................................1

STATEMENT OF ISSUES...........................................2

STATEMENT OF FACTS............................................3

SUMMARY OF ARGUMENT..........................................10

ARGUMENT....................................................11

   I.  THE COURT SHOULD DISMISS THE DEFENDANT'S APPEAL
       AS UNRIPE ...........................................11

       A.  Standard of Review..............................11

       B.  Discussion of Issue. ...........................11

   II. IN THE ALTERNATIVE, THE DISTRICT COURT DID NOT
       PLAINLY ERR IN REJECTING THE DEFENDANT'S REQUEST
       TO REDACT PARAGRAPH 29 OF THE PSR ...................16

       A.  Standard of Review..............................16

       B.  Discussion of Issue............................17

CONCLUSION..................................................21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

TABLE OF AUTHORITIES

CASES

Davis v. Federal Election Commission, 554 U.S. 724
    (2008)..................................................12, 13

Doe v. Virginia Department of State Police, 713 F.3d 745
    (4th Cir. 2013)...........................................12

Lujan v. Defenders of Wildlife, 504 U.S. 555
    (1992)....................................................14

Miller v. Brown, 462 F.3d 312
    (4th Cir. 2006)........................................11, 12

Scoggins v. Lee's Crossing Homeowners Association,
    718 F.3d 262 (4th Cir. 2013)...........................12, 14

Texas v. United States, 523 U.S. 296 (1998)....................12

United States Department of Justice v. Julian, 486 U.S. 1
    (1988)....................................................18

United States v. Blackman, 746 F.3d 147
    (4th Cir. 2014)...........................................13

United States v. Castilla, 571 F. App'x 193
    (4th Cir. 2014)(unpublished)..............................16

United States v. Dugger, 485 F.3d 236
    (4th Cir. 2007)...........................................16

United States v. Huckaby, 43 F.3d 135
    (5th Cir. 1995)...........................................18

United States v. Laudermilt, 576 F. App'x 383
    (4th Cir. 2014)(unpublished).......................13, 16, 19

United States v. McDowell, 745 F.3d 115
    (4th Cir. 2014)...........................................16

United States v. Olano, 507 U.S. 725 (1993)....................16

United States v. Pardee, 531 F.App'x 383
    (4th Cir. 2013)(unpublished)..............................20

United States v. Streich, 560 F.3d 926
    (9th Cir. 2009)..................................................15

United States v. Talebnejad, 460 F.3d 563
    (4th Cir. 2006)..................................................13

United States v. Trevino, 89 F.3d 187
    (4th Cir. 1996)..............................................18, 19

Williams v. United States, 503 U.S. 193 (1992)................13

## STATUTES

18 U.S.C. § 2251(a)..............................................3

18 U.S.C. § 2251(d)..............................................3

18 U.S.C. § 2251(a)(4)(A)........................................3

18 U.S.C. § 3553(a)...........................................8, 9

18 U.S.C. § 3583(e)..............................................1

18 U.S.C. § 3661................................................17

18 U.S.C. § 3742.................................................5

18 U.S.C. § 4248..............................................6, 14

28 C.F.R. § 0.95...............................................19

28 C.F.R. § 301.103............................................19

28 C.F.R. § 549.90(c)..........................................19

28 U.S.C. § 549.95(e)..........................................20

28 U.S.C. § 1291................................................1

## RULES

E.D.N.C. Crim. R. 32.2(j) .....................................18

Fed. R. Crim. P. 32(d)(2)......................................17

Fed. R. Evid. 803(8) ..........................................20

iii

<u>SENTENCING GUIDELINES</u>

USSG §2G2.1.................................................5

USSG §2G2.1(b)(2)(A) .......................................5

USSG §2G2.1(b)(3)..........................................5

USSG §2G2.1(b)(4)..........................................5

USSG §2G2.1(b)(5)..........................................5

USSG §2G2.1(b)(6)(B).......................................6

## STATEMENT OF JURISDICTION

This is a direct appeal by the defendant from the district court's entry of judgment after a guilty plea. Jurisdiction to the district court was based on 18 U.S.C. § 3583(e). Jurisdiction to this Court ordinarily is provided by 28 U.S.C. § 1291. As argued herein, however, the Court lacks jurisdiction over defendant's appeal because it is not ripe. The district court imposed sentence on November 3, 2014. Judgment was entered on November 6, 2014. The defendant filed a notice of appeal on November 7, 2014.

<u>STATEMENT OF ISSUES</u>

I.    Whether the defendant's appeal is ripe for disposition.

II.   Whether the district court plainly erred in overruling the defendant's request to redact a paragraph from the defendant's presentence investigation report.

## STATEMENT OF FACTS

### Procedural History

On January 24, 2014, a federal grand jury sitting in the Eastern District of North Carolina indicted the defendant on ten counts of manufacturing child pornography, in violation of 18 U.S.C. §§ 2251(a) and (d) (Counts One through Ten), and one count of possession of child pornography, in violation of 18 U.S.C. § 2251(a)(4)(A). (J.A. 8-12). On June 2, 2014, the defendant pleaded guilty, pursuant to a written plea agreement, to Count One of the indictment. (J.A. 19-39). On November 3, 2014, the district court sentenced the defendant to 600 months' imprisonment and 20 years' supervised release. (J.A. 65-70). On November 7, 2014, the defendant filed a timely notice of appeal. (J.A. 71-72).

### Offense Conduct

On August 1, 2013, the Cary, North Carolina, Police Department arrested the defendant and charged him with First Degree Sex Offense With a Child. (J.A. 78, ¶ 22). The investigation uncovered that the defendant sexually abused his stepdaughter ("the victim") beginning when she was 12 and continuing until she was 16. (J.A. 75, ¶ 5). Following the defendant's arrest, law enforcement seized and searched the defendant's cellular telephone and several hard drives. (J.A. 75, ¶ 6).

3

Examination of the telephone and computers yielded multiple naked images of the victim, as well as multiple videos of the victim engaged in sexual acts with the defendant. (J.A. 75, ¶ 6). The victim was 16 years old when the defendant began producing this child pornography. (J.A. 76, ¶ 10). The defendant also distributed some of the child pornography that he created. (J.A. 76, ¶ 7). Law enforcement also determined that the defendant directed the victim's actions by asking her to create and transmit pornographic images of herself to his cellular telephone. (J.A. 76, ¶ 8).

<u>Guilty Plea</u>

The defendant pleaded guilty, pursuant to a written plea agreement, on June 2, 2014. (J.A. 13-39). During the defendant's arraignment, the defendant was placed under oath. (J.A. 21). After questioning the defendant and counsel for both parties, the district court determined that the defendant was competent to plead. (J.A. 22-24).

The defendant acknowledged, among other things, that he understood his rights under the constitution and laws of the United States (J.A. 24); that he was not threatened or forced to enter into his guilty plea (J.A. 24); that he read and understood the plea agreement (J.A. 26); that the district court accurately summarized the terms of the plea agreement, including the offense to which he was pleading guilty and the minimum and

maximum terms of imprisonment (J.A. 26-30); and that he answered
all of the district court's questions truthfully (J.A. 30). As
part of his plea agreement, the defendant agreed to waive
"knowingly and expressly the right to appeal the conviction and
whatever sentence is imposed on any ground, including any appeal
pursuant to 18 U.S.C. § 3742, reserving only the right to appeal
from a sentence in excess of the advisory Guideline range that
is established at sentencing." (J.A. 33).

<u>PSR</u>

In preparation for the sentencing hearing, the United
States Probation Office prepared a presentence investigation
report (PSR). (J.A. 73-86). The PSR calculated the defendant's
base offense level to be 32, pursuant to §2G2.1. (J.A. 82,
¶ 43). The PSR also applied numerous enhancements, including
two levels because the offense involved the commission of a
sexual act or sexual contact, <u>see</u> USSG §2G2.1(b)(2)(A); two
levels because the offense involved distribution, <u>see</u> USSG
§2G2.1(b)(3); four levels because the offense involved material
that portrayed sadistic or masochistic conduct or other
depictions of violence, <u>see</u> USSG §2G2.1(b)(4); two levels
because the defendant was a parent, relative, or legal guardian
of the victim, <u>see</u> USSG §2G2.1(b)(5); and two levels because a
computer or interactive computer service was used to induce or
solicit a minor to participate in sexually explicit conduct, <u>see</u>

§2G2.1(b)(6)(B).  (J.A. 82, ¶¶ 44-48).  After reducing the defendant's offense level based on his acceptance of responsibility, the PSR calculated the defendant's total offense level to be 41. (J.A. 83, ¶ 56).

The PSR determined the defendant's criminal history category to be category V. (J.A. 78, ¶ 20). A total offense level of 40 and criminal history category V, in conjunction with the statutory maximum term of imprisonment, yielded an advisory guideline range of imprisonment of 360 months to 600 months. (J.A. 83, ¶ 58).  If not for the statutory maximum, the advisory guideline range of imprisonment would have been 360 months to life. (J.A. 83, ¶ 58).

The defendant raised three factual objections to the offense conduct described in the PSR. (J.A. 85-86). The defendant also objected to Paragraph 29 of the PSR; specifically, the defendant objected to the "inclusion of mental health records" in that paragraph based on their potential future use in certification screening under the Adam Walsh Act, 18 U.S.C. § 4248. (J.A. 86). Paragraph 29 described, among other things, mental health records and parole records relating to the defendant's participation in sex offender treatment programs. (J.A. 79-80, ¶ 29). In the alternative, the defendant asked that Paragraph 29 be redacted. (J.A. 86).

<u>Sentencing Hearing</u>

At the sentencing hearing held on November 3, 2014, the defendant did not ask to be heard on the first three factual objections. (J.A. 40-41). As a result, the district court denied those factual objections. (J.A. 41-42). As to the objection relating to Paragraph 29, defense counsel argued that, given the "pretty lengthy sentence" that the defendant was likely to receive, pursuing a civil commitment in the future based on the Adam Walsh Act would be "nonsensical" and a "burden on the taxpayers at that time." (J.A. 42). As a result, the defendant argued that the mental health history described in Paragraph 29 should not be included in the PSR. (J.A. 42). In the alternative, the defendant asked that the paragraph be redacted. (J.A. 42-43). The Assistant United States Attorney argued that the information in Paragraph 29 fell within the wide range of information a court may consider in fashioning an appropriate sentence. (J.A. 43). The district court denied the defendant's objection and noted that the information in Paragraph 29 "has no impact on the advisory guideline range." (J.A. 43).

The district court then adopted the PSR and confirmed that the defendant's advisory guideline range of imprisonment was between 360 months and 600 months. (J.A. 43-44). A.M., a victim of the defendant, provided a statement to the district

court wherein she described how the defendant sexually abused her and the impact of that abuse in her life. (J.A. 44-47). For example, the victim described how the defendant's abuse led her to send the defendant "sexual pictures." (J.A. 44-45).

The district court then heard from defense counsel, the defendant, and the Assistant United States Attorney. Defense counsel emphasized the defendant's acceptance of responsibility and asked for a sentence at the bottom of the advisory guideline range. (J.A. 49-51). The defendant apologized for his conduct. (J.A. 51-52). Government counsel asked for a sentence at the upper end of the advisory guideline range based on the defendant's criminal history (including a prior conviction for possession of child pornography and carnal knowledge of a child under the age of 16), the offense conduct, and the impact of the defendant's conduct on the victim. (J.A. 52-54).

In imposing sentence, the district court considered the factors under 18 U.S.C. § 3553(a). (J.A. 54). The district court stated that the "nature and circumstances of the offense just could not be more horrible. We've got a stepfather who starts molesting his stepdaughter when she is only 12 years old, and that continues for a period of four years." (J.A. 55). The district court also noted the defendant's prior conviction relating to child pornography and other offenses. (J.A. 55-56). The district court concluded that protecting the public from

future crimes of the defendant was "the key" factor under § 3553(a). (J.A. 57). The district court ultimately sentenced the defendant to 600 months' imprisonment and 20 years' supervised release. (J.A. 58).

## SUMMARY OF ARGUMENT

This Court should dismiss the defendant's appeal because it is not yet ripe. The defendant alleges one specific injury arising out of not redacting Paragraph 29—the possible use of Paragraph 29 in determining whether to certify the defendant for civil commitment under the Adam Walsh Act. The defendant, however, has not shown that such a certification is likely to occur in the near future. Instead, for this injury to develop, several events in the future would have to occur in a certain way. Given the contingent and uncertain nature of the defendant's alleged harm, the Court should dismiss the defendant's appeal as unripe.

In the alternative, the district court did not plainly err in rejecting the defendant's request to redact Paragraph 29. Importantly, the defendant's appeal merely challenges the government's right to access one paragraph of a PSR—not the public disclosure of PSR materials. Pursuant to federal regulations, the Bureau of Prisons may access PSRs for various reasons. Similarly, the regulations implementing the Adam Walsh Act civil commitment regime provide that the BOP may consider an individual's mental health history as part of its sexual certification process. For these and other reasons, the district court's decision should be affirmed.

ARGUMENT

I. THE COURT SHOULD DISMISS THE DEFENDANT'S APPEAL AS UNRIPE

A.    Standard of Review.

Whether a claim is ripe is a question of law that the Court reviews de novo.  Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006).

B.    Discussion of Issue.

The defendant argues that the district court abused its discretion in rejecting the defendant's request to redact Paragraph 29 from the PSR.  (Brief at 8).  The defendant argues that the information contained in a PSR is wide-ranging and sometimes not accurate (Brief at 9-10, 13-14); that he has a privacy interest in the information contained in his PSR (Brief at 11-12); that the government does not have a "compelling" interest in keeping the paragraph un-redacted (Brief at 13); that keeping the paragraph un-redacted creates a "strong risk of misuse," in that it might be used in deciding whether to certify the defendant under the Adam Walsh Act (Brief at 14); and that not redacting the paragraph will "lead to less accurate sentencing information for courts going forward" (Brief at 14-15).

As an initial matter, the Court should dismiss the defendant's arguments due to ripeness.[1]  "The ripeness requirement originates in the case or controversy constraint of Article III, and presents a threshold question [ ] of justiciability."  Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 269 (4th Cir. 2013) (alteration in original) (internal quotation marks omitted).  "A case is fit for adjudication 'when the action in controversy is final and not dependent on future uncertainties.'"  Scoggins, 718 F.3d at 270 (quoting Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006)).

"In determining ripeness, '[the Court] balance[s] the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration.'"  Doe v. Virginia Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013) (quoting Miller, 462 F.3d at 319 (citations and internal quotation marks omitted)).  "Stated alternatively, '[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Scoggins, 718 F.3d at 270 (quoting Texas v. United States, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted)); see also Davis v. Fed. Election

---

[1]  The government acknowledges that ripeness is not typically raised in criminal appeals.  Based on the specific claim and injury alleged by the defendant, however, it is appropriate to challenge ripeness in this case.

Comm'n, 554 U.S. 724, 734 (2008) ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.").

For example, "[w]here no final forfeiture order or judgment has been entered, ruling on [an Eighth Amendment challenge to a forfeiture order] would be premature." United States v. Blackman, 746 F.3d 147, 144 (4th Cir. 2014) (citing United States v. Talebnejad, 460 F.3d 563, 573 (4th Cir. 2006)). Similarly, in a recent unpublished decision, the Court declined on direct appeal to correct allegedly inaccurate information in a defendant's PSR when the information did not alter the defendant's sentence. United States v. Laudermilt, 576 F. App'x 177, 183 (4th Cir. 2014) (unpublished) (holding that, on direct review, "this court is limited to determining whether the alleged error impacts the 'selection of the sentence imposed'" under Williams v. United States, 503 U.S. 193, 203 (1992)). Notably, the Laudermilt panel held that "[o]ther post-judgment consequences [of inaccurate PSR information], while certainly important to [the defendant], are matters which may or may not occur, may require factual development and administrative exhaustion within the BOP, and may, depending on the harm alleged, find other remedies . . . ." Laudermilt, 576 F. App'x at 183.

Although the defendant generally complains that the Bureau of Prisons (BOP) uses PSRs to "make significant decisions about an inmate" (Brief at 11), he raises only one specific example of how the Bureau might harm him by using Paragraph 29 in this case.[2] The defendant alleges that the BOP may use the PSR in the future to determine whether to certify the defendant as sexually dangerous under the Adam Walsh Act. (Brief at 14); see 18 U.S.C. § 4248 (providing for the civil commitment of sexually dangerous individuals).

The defendant does not allege that he is likely to be considered for certification in the near future. Instead, defendant acknowledges that such a certification likely will not be considered until he is serving the latter portion of his 600-month term of imprisonment. (Brief at 14); (J.A. 42). In any event, whether the BOP considers the defendant for civil commitment under the Adam Walsh Act and whether such consideration includes a review of Paragraph 29 of the defendant's PSR are the kind of "contingent future events" referenced in Scoggins, 718 F.3d at 270.

---

[2] To the extent the defendant alleges that the BOP may use Paragraph 29 in some other way (Brief at 9, 13-14), he has not alleged the kind of concrete and particular injury required to satisfy the requirements of standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). For example, after arguing that the BOP uses PSRs "to make critical life-decisions for inmates," the defendant only cites to the possible use of Paragraph 29 "in deciding whether to certify [the defendant] under 18 U.S.C. § 4248." (Brief at 13-14).

The United States Court of Appeals for the Ninth Circuit has dismissed as unripe a similar challenge to the inclusion of information in a PSR. In United States v. Streich, 560 F.3d 926, 932 (9th Cir. 2009), the defendant challenged the inclusion of psychosexual information in his PSR. The defendant's "claimed injury [was] a potential civil commitment on the basis of the inclusion of the psychosexual treatment information in his PSR." Streich, 560 F.3d at 932. The Court of Appeals dismissed this claim as unripe after concluding that such a potential future civil commitment is "the classic example of a contingent future event that may not happen at all." Id. (internal quotation marks omitted).

Similarly, the defendant here asks that information from his PSR be redacted[3] based on a concern that it will be used in the future to determine whether to initiate a civil commitment process. (Brief at 14). The defendant does not otherwise challenge the inclusion of the information in the PSR or the district court's consideration of that information as part of its sentence. (Brief at 11). Even assuming, for the sake of

---

[3] Although the defendant characterizes his request as seeking the redaction of Paragraph 29, it functionally would require the district court to strike the paragraph going forward. Even if the district court redacted the PSR as the defendant wished, an un-redacted PSR (the original) would presumably still exist and could theoretically be used in future court proceedings. Thus, to ensure that the BOP could not access Paragraph 29 going forward (as the defendant requests), Paragraph 29 would likely have to be struck in its entirety.

argument, that Paragraph 29 is ultimately used as part of the certification process under the Adam Walsh Act, the defendant will have the opportunity to challenge the weight it should carry at any later civil commitment hearing.  See Laudermilt, 576 F. App'x at 183.  Given the contingent and uncertain nature of the defendant's alleged harm, the Court should dismiss the defendant's appeal as unripe.

II.  IN THE ALTERNATIVE, THE DISTRICT COURT DID NOT PLAINLY ERR IN REJECTING THE DEFENDANT'S REQUEST TO REDACT PARAGRAPH 29 OF THE PSR

A.  Standard of Review.

Although the defendant objected to the inclusion of Paragraph 29 in the PSR (and, alternatively, asked to redact that information), he did not raise the specific privacy argument advanced in his brief.  (Brief at 11-14).  Consequently, this Court's review is for plain error.  United States v. Olano, 507 U.S. 725, 732 (1993); see also United States v. Castilla, 571 F. App'x 193, 194 (4th Cir. 2014) (unpublished) (applying plain error review).[4]

---

[4] Alternatively, this Court reviews "a district court's legal conclusions at sentencing de novo and its factual findings for clear error." United States v. McDowell, 745 F.3d 115, 120 (4th Cir. 2014).  This Court may reverse for clear error only if it is "left with the definite and firm conviction that a mistake has been committed." United States v. Dugger, 485 F.3d 236, 239 (4th Cir. 2007) (internal quotation marks omitted).  Regardless of the standard of review applied, this Court should affirm the decision of the district court.

B.  <u>Discussion of Issue</u>.

On appeal, the defendant does not challenge the original inclusion of Paragraph 29 in the PSR or the district court's possible use of Paragraph 29 in sentencing the defendant. (Brief at 11 ("Mr. Simmons does not object to the district court having used the information in Paragraph 29 in sentencing him.")).  Indeed, Federal Rule of Criminal Procedure 32(d)(2) requires that a PSR contain "the defendant's history and characteristics, including . . . <u>any</u> circumstances affecting the defendant's behavior that may be helpful in imposing sentence <u>or in correctional treatment</u>." (emphases added); <u>see also</u> 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Importantly, the defendant did not challenge at sentencing the accuracy of the information contained in Paragraph 29. (J.A. 42-43).  Although the defendant generally complains regarding the possible use of the PSR "outside of a criminal sentencing," his primary complaint is that the BOP may "make significant decisions about an inmate . . . with no opportunity for the inmate to dispute, correct, or complain about the information contained in the PSR."   (Brief at 10, 11).

Consequently, as a practical matter, the defendant argues that the BOP should not have access to information the accuracy of which the defendant did not dispute at sentencing. And the only specific BOP decision that the defendant references is the possible use of the PSR in determining whether to certify the defendant under the Adam Walsh Act. (Brief at 14).

In support of his arguments, the defendant relies extensively on United States v. Huckaby, 43 F.3d 135 (5th Cir. 1995). (See, e.g., Brief at 11). Huckaby, however, addressed the distinguishable question of whether a district court abused its discretion in making a PSR publicly available to third parties. Huckaby, 43 F.3d at 137-38. The Supreme Court likewise has noted that, "in both civil and criminal cases[,] the courts have been very reluctant to give third parties access to the presentence investigation report prepared for some other individual or individuals." United States Dep't of Justice v. Julian, 486 U.S. 1, 12 (1988) (emphasis in original). Indeed, "the confidentiality of PSRs has always been jealously guarded by the drafters of the federal rules, and by the federal courts." See United States v. Trevino, 89 F.3d 187, 192 (4th Cir. 1996); E.D.N.C. Crim. R. 32.2(j) (noting that the final PSR and other documents "shall be received by the clerk under seal for inclusion in the record"). The defendant, however, does not allege that his PSR will be made available to the general

public.   Instead, he complains about its possible use by the BOP—an agency of the United States.   (Brief at 9, 11, 14); 28 C.F.R. § 0.95.

The defendant's arguments are contrary to established regulations and practices allowing BOP officials to access information from a PSR for various reasons.   For example, the unit team of an inmate "shall review appropriate medical records, presentence reports, admission summaries, and all other available information prior to the designation of an inmate to a work assignment."   28 C.F.R. § 301.103.   Likewise, this Court has noted that PSRs "frequently detail the subject's childhood and family history, education and work resume, mental and physical condition, and history of substance abuse" and that the BOP "may properly rely [on those factors] in classifying the defendant for incarceration."   Trevino, 89 F.3d at 191; see also United States v. Laudermilt, 576 F. App'x 177, 183 (4th Cir. 2014) (unpublished) ("We also have no doubt that criminal history points are considered by the BOP in determining an inmate's security level and custody classification.").

With respect to the Adam Walsh Act, the BOP "will consider any available information in its possession" in determining whether to certify that someone is a sexually dangerous person. 28 C.F.R. § 549.90(c).   Of particular relevance to this appeal, in considering whether someone satisfies one of the elements of

19

being a sexually dangerous person, BOP mental health professionals may consider evidence "[i]ndicating successful completion of, or failure to successfully complete, a sex offender treatment program." 28 U.S.C. § 549.95(e). Thus, the BOP may consider an individual's mental health history as part of its sexual certification process.

As a result, in seeking redaction of Paragraph 29, the defendant asks to remove information that otherwise would be available to the BOP as part of the determination whether to certify someone as a sexually dangerous person. Moreover, the defendant's request seeks to remove information that would otherwise be admissible at a civil commitment hearing as an official document. See United States v. Pardee, 531 F. App'x 383, 387 (4th Cir. 2013) (unpublished) (noting that a PSR was "surely admissible into evidence . . . as an official document" pursuant to Federal Rule of Evidence 803(8)).

Thus, assuming, for the sake of argument, that the Court has jurisdiction, the district court did not plainly err in denying the defendant's request to redact Paragraph 29. As discussed previously, the defendant has not demonstrated a right to privacy to prevent the BOP from accessing information in his PSR. Given the BOP's use of PSRs to make penological decisions, the government has a strong interest in accessing the un-redacted PSR. To the extent the defendant argues that PSRs

oftentimes include inaccurate information, such a concern is not present here because the defendant did not contest at sentencing the accuracy of the information in the PSR. (J.A. 42-43, 68). Consequently, the district court did not err (plainly or otherwise) in denying the defendant's request to redact Paragraph 29.

<u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully submits that the judgment of the district court should be affirmed.

Respectfully submitted, this 30th day of March, 2015.

THOMAS G. WALKER
United States Attorney


BY:  <u>/s/ Seth M. Wood</u>
     SETH M. WOOD
     Assistant United States Attorney
     310 New Bern Avenue
     Suite 800, Federal Building
     Raleigh, North Carolina 27601-1461
     Telephone: 919-856-4530

JENNIFER P. MAY-PARKER
Assistant United States Attorney

Of Counsel

<u>CERTIFICATE OF COMPLIANCE</u>

TO BE INCLUDED IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1. This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

_____    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT Sans Serif typeface such as Arial). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

_____

__X__    Twelve point, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier New, 12 point):

_Microsoft Word 2010, Courier New, 12 point_____

2. EXCLUSIVE of the corporate disclosure statement, table of contents, table of citations, state with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

__X__ _21_    Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

_____ _____    Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____ _____    Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                                    _/s/ Seth M. Wood_____
                                    SETH M. WOOD
                                    Signature of Filing Party

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

Eric J. Brignac
Assistant Federal Public Defender

/s/ Seth M. Wood
SETH M. WOOD
Assistant United States Attorney